IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-258(3) |
| | § | C.A. No. C-05-473 |
| JOSE ANGEL CHAMPION, | § | |
|     Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jose Angel Champion's ("Champion") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 169).[1] It was received by the Clerk on September 19, 2005, and is deemed filed as of September 16, 2005.[2] The Court ordered the government to respond, and the government has moved to dismiss Champion's motion on the grounds that it is barred by the applicable statute of limitations. (D.E. 186, 187). Alternatively, the government moves to dismiss the motion because the claims therein do not entitle him to relief. (Id.).

Champion has filed a response to the government's motion to dismiss (D.E. 190), as well as his own motion for summary judgment (D.E. 189), which the Court has also

---

[1] Dockets entries refer to the criminal case, C-03-cr-258.

[2] Champion's motion states that it was executed on September 16, 2006. That is the earliest date it could have been delivered to prison authorities, and thus deemed filed. Houston v. Lack, 487 U.S. 266, 276 (1988)(a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for mailing, postage pre-paid). See also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992)(providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings).

1

considered. Additionally, the Court also addresses Champion's motion to conduct discovery (D.E. 172), and the government's response thereto. (D.E. 186).

For the reasons set forth herein, the Court GRANTS the government's motion to dismiss, and denies Champion's claims on their merits and DISMISSES his § 2255 motion. The Court also DENIES Champion a Certificate of Appealability. Finally, the Court DENIES Champion's motion for summary judgment and DENIES his request for discovery.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTS AND PROCEEDINGS

On September 23, 2003, Champion was charged in an indictment with two co-defendants. (D.E. 1). Champion was named only in the third count, which charged him with conspiring to knowingly and intentionally possess with intent to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, from on or about May 1, 2001 to June 18, 2003. Champion pleaded guilty on November 3, 2003. (D.E. 47). There was no written plea agreement. (D.E. 47).

The Court ordered the United States Probation Office to prepare Presentence Investigation Report, and Champion, through counsel, filed written objections to the report. (D.E. 113). On February 2, 2004, Champion filed a motion for his counsel at that time, Charles Cecil Starcher, to withdraw. When the parties appeared for sentencing on February 5, 2004, Mr. Starcher indicated that the motion to withdraw was being withdrawn. At that time, Champion also told the Court that he was satisfied with his attorney and that they had

worked out their differences. (D.E. 122). There was also a discussion at that time concerning the amount of marijuana that Champion should be held responsible for. The prosecutor noted that a certain witness, Erasmo Zapata, had testified against the two co-defendants and had told the Assistant United States Attorney ("AUSA") that Champion had 15 other loads. AUSA Galvan told the Court that he believed that the numbers in the PSR were erroneously inflated based on the testimony of that witness, which Mr. Galvan believed to be exaggerated. Mr. Galvan believed the offense level should be 36, instead of the 38 as indicated in the PSR. The Court reset the case to February 26, 2004, when it was called again for sentencing.

On that date, the Court heard testimony from both Champion and Zapata regarding the drug amounts involved in the conspiracy. The Court stated that it would not use uncorroborated testimony from Zapata to determine drug amounts in the case, because the Court did not believe Zapata was a credible witness. As a result of the Court discounting Zapata's testimony, Champion's base offense level was reduced from 38 to 34. He was given a four-level increase for being a leader/organizer of the offense and received a three-level reduction for acceptance of responsibility. This resulted in a guideline range of 168 to 210 months. (D.E. 151, Sentencing Transcript ("S. Tr.") at 68-71, 74-75). The government moved for a downward departure of one-third of his sentence, to 112 months, based on Champion's substantial assistance. The Probation Office recommended a six-level reduction, but a sentence of 108 months, the high end of the resulting guideline range, in order to avoid great disparities between him and his co-defendants.

3

This Court sentenced Champion to 108 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term, and imposed a $2000 fine and a $100 special assessment. (D.E. 126, 129). Judgment of conviction and sentence was entered on March 5, 2004. (D.E. 129).

Champion timely appealed. He retained John Grant Jones as his appellate attorney. On August 5, 2004, Jones filed a voluntary notice of dismissal signed by him and by Champion, which was also notarized as to Champion's signature. The Fifth Circuit dismissed his appeal the same day. He did not file a petition for writ of certiorari.

Champion filed his motion pursuant to 28 U.S.C. § 2255 on September 16, 2005.[3] He also filed a number of additional, related motions. By Order entered October 12, 2005, this Court denied his accompanying motions to proceed *in forma pauperis* and for appointment of counsel, and required the government to file a response both to his § 2255 motion and to his motion for discovery. (D.E. 175).[4] These two motions (D.E. 169, 172) are now pending before the Court, as are Champion's motion for summary judgment (D.E. 189), and the government's motion to dismiss (D.E. 187).

---

[3] See supra note 2.

[4] In the same order, the Court instructed that Champion's accompanying "Notice of Appeal" should be construed as a supplemental memorandum in support of his § 2255 motion. (D.E. 175). However, the notice of appeal had already been docketed as such, and was received by the Fifth Circuit. (D.E. 173, 174). The appellate court treated it as a notice of appeal from the underlying judgment in his criminal case, and noted that it was not timely and therefore did not confer jurisdiction on that court. (D.E. 180). It thus dismissed his appeal for lack of jurisdiction.

4

### III. MOVANT'S ALLEGATIONS

In his § 2255 motion, Champion asserts two claims. First, he claims that he was denied effective assistance of counsel at sentencing, because his counsel, Cecil Starcher, failed to challenge the amount of marijuana the Court attributed to him, and also failed to challenge the four-level enhancement to his sentence due to his role as a leader or organizer.

Second, he claims that his appellate counsel, Grant Jones, failed to pursue the appeal on his behalf. His motion makes a number of related allegations, including that Jones failed to consult with him about his appeal, and that Jones gave him a blank document to sign, which Champion claims he signed without knowing it would be a motion for dismissal before the Fifth Circuit.

### IV. DISCUSSION

#### A.  Statute of Limitations

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[5] 28 U.S.C. § 2255. The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the

---

[5] The statute provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

5

applicable period for seeking review of a final conviction has expired. Clay v. United States, 537 U.S. 522, 525 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (*per curiam*).

In a case where a defendant's conviction is affirmed on direct appeal, and he then fails to file a petition for writ of certiorari, his motion is deemed final when the period for filing the petition for writ of certiorari passes without him having filed one. Clay, 537 U.S. at 525.

In this case, Champion filed a notice of appeal, but then voluntarily dismissed the appeal. This differs from the procedural history in Clay, where the appellate court had affirmed the lower court's decision. The government argues that because Champion voluntarily dismissed the appeal, his judgment became final on the date of the dismissal, rather than 90 days later. It argues that this is true because no petition for writ of certiorari was available to him, and thus his conviction was final as of the dismissal. Champion argues, however, that his conviction became final 90 days after the dismissal, relying on Clay, supra.

In this case, the determination of whether his judgment became final on the date the appeal was dismissed, or 90 days past that date, is crucial. The dismissal occurred on August 5, 2004. Champion's § 2255 motion was filed on September 16, 2005, more than one year beyond that date. Thus, if the conviction is deemed "final" on the date of the appeal's dismissal, his § 2255 motion is untimely. On the other hand, if Champion's conviction did not become final until after the 90-day period for him to file a petition for

6

writ of certiorari, his conviction became final 90 days after August 5, 2004, or on November 1, 2004. His § 2255 motion was filed less then one year after that date, and thus would be timely.

It is at least arguable that Clay does not speak to this precise issue, since in that case, the conviction was affirmed on appeal. The government cites to no cases to support its position, however. The Court's own research has located a number of lower court decisions addressing this issue, most of which are unpublished. These cases reach different results. Compare, e.g., United States v. Sylvester, 2006 WL 695796 (M.D. Pa. March 17, 2006) (a voluntary dismissal of appeal renders a petition for writ of certiorari unavailable, and thus the judgment of conviction would be final at the point of the voluntary dismissal of the appeal, instead of 90 days later) and Stern v. United States, 2005 WL 2922457 (S.D. Ohio 2005) (same) with Baughman v. Erwin, 2005 WL 2042998 (D. Vt. 2005) (in context of 28 U.S.C. § 2254 proceeding challenging state conviction, defendant's state court judgment became final 90 days beyond the date the Vermont Supreme Court dismissed his appeal on his motion) and Marshall v. Crosby, 2006 WL 568341 (N.D. Fla. 2006) (stating that the defendant's state court judgment became final 90 days after the state appellate court granted his motion for voluntary dismissal of his appeal, although not addressing the counter-argument).

In view of the uncertainty surrounding the issue of his motion's timeliness,[6] the Court

---

[6] Even if it were filed outside the applicable statute of limitations, Champion's motion could still be deemed timely if he were entitled to equitable tolling. Champion does not agree that his motion is untimely, and he has not sought equitable tolling because he believes it unnecessary. (D.E. 190 at 5-6).

will instead address Champion's claims on their merits, rather than dismissing the motion as barred by limitations.

**B.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

**C.     Ineffective Assistance of Counsel**

   **1.     Standards For Evaluating Ineffective Assistance Claims**

Champion claims that he was denied effective assistance of counsel at sentencing and on appeal.  These claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984).  United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  Id. This means that a movant must show that counsel's performance was outside the broad

range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

In order for Champion to show that he suffered prejudice as to any *sentencing* issues, he must show that there is a reasonable probability that but for counsel's alleged errors, his sentence would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). As discussed herein, there is no evidence to support any contention that, but for counsel's alleged errors, Champion would have received a different sentence.

### 2.   Failure To Object to "Relevant Conduct" Used To Increase His Base Offense Level

Champion first argues that his sentencing counsel was ineffective for failing to object to the four-level enhancement for his role as a leader/organizer in the offense. His sentencing counsel has provided an affidavit in which he explains the rationale for not objecting:

> [A]n objection to the four-level enhancement for leader/organizer role was not warranted or supported by

9

> evidence. Mr. Champion testified at the trial of his co-defendants about his involvement in this conspiracy. To object to this enhancement would not have been appropriate. In fact, if Mr. Champion would have testified that he was not a leader or organizer at his sentencing hearing, then he would have been committing perjury.

(D.E. 186, at Exh. 1, Starcher Affidavit at 1).

Mr. Starcher's analysis of this issue is correct. The sentencing guidelines provide that a defendant's offense level should be increased by four levels if he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). The application notes elaborate:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1, appl. note. 4.

Champion admitted during trial that he arranged transactions between people willing to drive illegal loads of marijuana and persons needing drivers, and he directed other individuals as to where to pick up and deliver loads. In the first load run by Romeo Botello, his co-defendant, Champion went alone to Houston to retrieve the money for the load $40,000, taking $10,000 of it for himself. He later sold a truck to Botello and

10

Botello's brother, and then continued to locate loads of marijuana that they could transport. He arranged meetings between suppliers and drivers. He was involved in loading trucks and unloading of trucks and recruiting drivers. (D.E. 82, Partial Trial Transcript ("Trial Tr.") at 5-28). In short, Champion's trial testimony clearly establishes his leader/organizer role.

Thus, no prejudice can be shown. Had Mr. Starcher objected on this ground, Champion's sentence would not have been lower.[7] Accordingly, Champion cannot show prejudice as a result of his counsel's failure to object on this ground. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

### 3. Failure To Object to Amount of Marijuana Used To Establish His Base Offense Level

Champion also contends that his sentencing counsel was ineffective because he failed to object to the amount of marijuana attributed to Champion. At sentencing, Champion testified that he was responsible for only five loads, totaling 6400 pounds (the equivalent of about 2909 kilograms).[8] He claims that, despite this, his counsel "of his own

---

[7] As Mr. Starcher suggests, however, Champion's sentence may have increased had he pushed for the objection and offered testimony contradicting his trial testimony.

[8] For purposes of this motion, this Court credits Champion's estimates of the pounds in each load of marijuana. If using the amounts credited to those loads by the PSR, the total would actually be slightly higher, at 2924.64 kilograms.

11

volition attributed 'about 5,000 kilograms' or 11,023 pounds to petitioner. (Sentencing Transcript, Page 13)." Champion claims that his base offense level should have been based only on the amounts Champion admitted at sentencing, and thus been 32, rather than 34. Champion contends that this, coupled with no enhancement for leader/organizer role, and the six-level reduction recommend by the government, would have left him with a final offense level of 23, and would have resulted in a guideline range of 46 to 57 months. (D.E. 169 at 10-11). He claims he should have received a 46-month sentence. (Id. at 11).

In response, Champion's counsel, Mr. Starcher, has explained that both the PSR and the government argued for a ***higher*** drug amount than was attributed to Champion by the Court. Some of the evidence supporting the additional marijuana came not from Mr. Zapata, whose testimony was discredited by the Court, but from other sources. Most importantly, Champion himself testified at trial to additional loads of marijuana as part of the conspiracy. Indeed, he referenced at least seven different loads at trial. (D.E. 82, Trial Tr. at 29-30).

Three of those were loads that occurred in October and November 2001, within the time-frame of the conspiracy, and these were not any of the five loads referenced by Champion at sentencing. These loads were transported using a truck in the possession of co-defendant Romeo Botello, and Champion put Botello in touch with the supplier and assisted in the transaction. The persons involved in these loads were Champion, the

12

supplier and his driver, co-defendant Botello and David Garcia.[9] (D.E. 82, Trial Tr. at 7-12). None of these loads were mentioned in Champion's sentencing testimony, but yet he clearly admitted his involvement in them and they were within the time-frame of the conspiracy and involved one of his co-defendants. He did not specify the amount of marijuana that was transported during any of these three loads, but the full payment for one of the loads was $40,000, of which Champion received $10,000. (Id. at 8). It is likely, then, that any one of these loads was at least 98 kilograms, which would increase Champion's offense level to 34, the level assessed by the Court.

Champion also testified that he arranged a second load to be transported on the same day as a load that resulted in a broken down tractor-trailer in Missouri, although he did not mention the second load at sentencing. (D.E. 82, Trial Tr. at 17-18). That additional load, which was going to Houston, consisted of 400 pounds or 181.82 kilograms of marijuana. (Id.) This additional load, without any of the three referenced in the prior paragraph, would also push the drug amount attributable to Champion to over 3,000 kilograms.[10]

Moreover, as the Probation Officer noted at sentencing, Champion owned land and other assets that greatly exceeded what would be typical for someone with his reported earnings to the IRS. (D.E. 151, S. Tr. at 68-69). Yet he would have the Court believe that he ran only five loads total, two of which were seized. Thus, he would have been

---

[9] Garcia was Botello's brother who had worked with Champion and the same supplier on a couple of prior occasions running illegal loads.

[10] Champion admits that he testified at sentencing that he was responsible for 2902 kilograms. An additional 181.82 kilograms would make the total amount attributable to Champion 3083.82 kilograms.

13

successful on only three loads, a contention that is belied by his assets. (Id.).

For all of these reasons, even disregarding any uncorroborated testimony by Zapata, the record clearly supports the Court's finding that Champion should be held responsible for at least 3000 kilograms or marijuana and sentenced at a base offense level of 34.[11]

Because the Court's calculation of the drug quantity was correct, and amply supported by the entirety of the record, his counsel objecting to the amount would not have altered this Court's conclusions nor resulted in a lower sentence for Champion. Accordingly, his claim of ineffective assistance on this ground fails. Kimler, 167 F.3d at 893.

### 4. Failure to Object to Government's Violation of Proffer Letter Agreement

Champion also claims that his counsel was ineffective for failing to bring his "proffer letter/agreement" to the Court's attention. He claims that the letter included an agreement that he would not be held accountable for relevant conduct, that the government would recommend a sentence at the lower end of the guideline range, and that the government would recommend he receive a downward departure. The Court finds no merit in his contention. The proffer letter, filed as an exhibit by both the government and by Champion's trial counsel, Mr. Starcher, (D.E. 186 at Exh. 1, 5) does not contain any promise by the government that Champion would not be held accountable for relevant

---

[11] Champion relies heavily on the fact that the Court found him credible and did not rely on Zapata's testimony, which was relied upon heavily by the Probation Office in drafting the PSI. Notably, although the Court said it found Champion to be *more* credible than Zapata, it did not say that it believed every aspect of Champion's testimony at sentencing. As noted herein, Champion's testimony that he was involved in only five loads conflicted with his trial testimony.

conduct. Nor does it contain a promise that the government would recommend the low end of the guidelines or a downward departure. Thus, no ineffective assistance of counsel claim can be premised on a failure to bring non-existent promises to the attention of the Court.

### 5. Failure to Pursue Appeal

Champion also argues that his appellate counsel, Grant Jones, was ineffective because he failed to pursue his appeal. He claims that Mr. Jones took money from him and his wife in order to pursue the appeal. In July 2004, however, he claims that Mr. Jones visited him at FCI-Bastrop and informed him that it was very time-consuming and too expensive traveling to see Champion. He claims that Mr. Jones requested that Champion provide his signature on two documents that contained Mr. Jones' office letterhead and a place for Champion to sign, but were otherwise blank. (D.E. 169 at 4).

He also claims that he spoke with Mr. Jones in August 2004 via telephone, and that Mr. Jones told him that the government was going to "object" to the appeal and that the only way Champion would get a reduction in his sentence would be to provide substantial assistance to the government in prosecuting others. (D.E. 169 at 6). He claims that from September 2004 through January 2005, it was very difficult for him or his wife to contact Mr. Jones, and that they were trying to obtain a copy of the appellate brief and learn the status of the appeal. (D.E. 169 at 5-6). Champion contends that it was not until early February of 2005 that he received a packet of legal documents from Mr. Jones and finally discovered that Mr. Jones had not ever filed an appeal brief on his behalf. (D.E. 169 at 6). He claims that Mr. Jones deceived him into believing that the appeal was in progress

15

and pending when in fact the appeal had been dismissed. (D.E. 169 at 8).

The government has provided an affidavit from Mr. Jones responding to Champion's motion. In that affidavit, Mr. Jones responds to many of the specific allegations in Champion's motion. (D.E. 186, Exh. 2 at pp. 2-6). He also offers a summary of his testimony, in which he avers:

> At no time did I ever deceive Mr. Champion into believing his appeal was in progress when it was not. He agreed to withdraw his notice of appeal with full advice of counsel. After reading and summarizing the record, conferring with trial counsel, and conferring with defendant before and after my reading and assessment of the record, it was my advice to Mr. Champion that he had no meritorious grounds for appeal and that he had received very favorable treatment in the trial which might be lost should he, by remote chance, win a new sentencing hearing. Mr. Champion agreed with this advice and authorized me to file a motion to dismiss the appeal. I mailed Mr. Champion a Motion to Dismiss Appeal form signed by me with instructions for him to sign the motion before a notary. Mr. Champion signed the motion before a Notary and mailed it back to me.

(D.E. 186 at Exh. 2, Jones Aff. at p. 1).

Mr. Jones also swears that he "never gave Mr. Champion any document to sign in blank." (Id.). Mr. Jones' affidavit also contains a letter sent to Champion dated July 13, 2004, in which he states that he is enclosing the motion to dismiss the appeal, asks Champion to sign it in the presence of a notary and to mail it back to him in the enclosed return envelope. (D.E. 186 at Exh. 2, Jones Aff. at Exh. D). Additionally, Mr. Jones has included a copy of the Motion to Dismiss the appeal. The document is signed by Mr. Jones, and contains the notarized signature of Champion. The notary's signature indicates

16

that the document was signed by Champion on July 22, 2004 in Bastrop, Texas.  (Id.).

In addition to Mr. Jones' sworn testimony, the plain record before the Court flatly contradicts Champion's contention that he did not know about or agree to the dismissal of the appeal.  Champion does not dispute that it is his signature on the Notice of Voluntary Dismissal, nor does he dispute that it is properly notarized.  Rather, he claims that the notice of dismissal was blank when he signed it.  The Court finds this explanation too far-fetched to be credited.  There is no reason for animus on the part of Mr. Jones, no reason why he should go to such lengths to get an appeal dismissed unless it was in fact what Champion had wanted.

Additionally, the documentation in the case reflects that the document signed by Champion was sent with a cover letter from Mr. Jones stating that a voluntary notice of dismissal was enclosed.  (D.E. 186 (D.E. 186 at Exh. 2, Jones Aff. at Exh. D).  To believe Champion's explanation for his signature on that document is tantamount to concluding that Mr. Jones has not only perjured himself before this Court but has gone to great lengths to commit a fraud upon the Court, even to the extent of preparing a bogus letter to Champion and giving it an earlier date.  Nothing done by Mr. Jones in his years of advocacy before this Court, and nothing credible in the record, supports such a conclusion.  Instead, the Court finds that Mr. Jones' explanation of the signed notice of dismissal is both rational and believable.

Accordingly, the Court does not find that Champion was denied effective assistance of counsel on appeal.  This claim fails.  For the above reasons, the government's motion to

dismiss is GRANTED, and Champion's § 2255 motion is DENIED.

**D.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Champion has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287

F.3d 325, 329 (5th Cir. 2002)(relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Champion's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Champion is not entitled to a COA as to his claims.

### E.   Motion to Conduct Discovery

Champion has also filed a motion for leave to conduct discovery. (D.E. 172). In it, he seeks discovery of specific items and also requests that certain interrogatories be propounded. For good cause shown, the Court is authorized to order discovery in Section 2255 proceedings. RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS, Rule 6 (allowing a district judge to order discovery in § 2255 proceedings for good cause shown). The Court concludes that Champion has not shown good cause for the discovery he requests.[12] Champion's motion for discovery (D.E. 172) is DENIED.

### V.  CONCLUSION

For the above-stated reasons, the Court GRANTS the government's motion to dismiss (D.E. 187) and DISMISSES Champion's motion. (D.E. 169). The Court also DENIES Champion a Certificate of Appealability. Finally, the Court DENIES Champion's

---

[12] It is worth noting, moreover, that in the government's response to the his § 2255 motion, and in the affidavits of his sentencing and appellate counsel, much of the discovery requested by Champion has, in fact, been provided. He had the benefit of those documents and testimony when preparing his response and his own motion for summary judgment.

motion for summary judgment (D.E. 189) and DENIES his request for discovery (D.E. 172).

ORDERED this 6th day of May 2006.

_____
HAYDEN HEAD
CHIEF JUDGE